CLAUDE PARKER, APPELLANT, V. WILLIAM J. HARRELL ET AL., APPELLEES.

FILED MAY 29, 1936. No. 29566.

*Baylor & TouVelle, George A. Healey* and *Casey & Corenman,* for appellant.

*Chambers & Holland, Mockett & Finkelstein, Hall, Cline & Williams* and *R. A. Locke, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

PAINE, J.
Claude Parker brought action against William J. Harrell and Ben C. Finkelstein, defendants, to recover personal

damages for physical injuries suffered by him in an automobile collision in the city of Lincoln on the afternoon of November 22, 1933.

At the close of all the evidence, the court directed a verdict for Ben C. Finkelstein on the ground of insufficient evidence to establish the agency of Harrell at the time of the accident. The jury returned a verdict of $5,000 for Parker against Harrell.

This is a companion case to *Harrell v. People's City Mission Home, ante,* p. 138, and both concern the same accident. That case was tried in the district court several months after this one, and the bill of exceptions therein is much longer; still, many of the same facts applicable to this case will be found set out in that opinion.

The appeal in the case at bar is by Parker, the plaintiff and appellant, to reverse the ruling of the trial court dismissing the action as to Ben C. Finkelstein. The principal error relied upon for reversal is in not submitting to the jury the question of Finkelstein's liability. In this appeal the question of negligence is not involved, but only the question of the liability of Ben C. Finkelstein.

So much of the facts as are necessary will be briefly summarized. The plaintiff was 27 years of age, and an employee of the People's City Mission Home, and was riding in the model A Ford truck of the said Mission, but was permitting Elmer Pelton, who was his guest in the truck, to drive it for him when the collision occurred.

The defendant William J. Harrell was employed by Ben C. Finkelstein as a wrecker to tear automobiles apart and as a salesman for second-hand cars. He was driving a 1929 Whippet sedan, which belonged to his employer, whose principal place of business was at 2053 O street. The employer also had a place of business at 1901 Vine street, where some cars were junked and the parts were sold, and Mr. Harrell was in charge of this small branch business on Vine street, which was about two blocks west and eight blocks north of Finkelstein's main place of business near the corner of Twenty-first and O streets.

There was a small dwelling in connection with the Vine street place of business, and Harrell, who was 34 years old, lived there with his wife and boy. Finkelstein paid him $14 a week and gave him the use of the house. Having lived there a month, the electric light bill was due; he took an old Whippet sedan, 1929 model, belonging to his employer, during the noon hour, and drove to the Iowa-Nebraska Light & Power Company to pay his light bill. They refused to accept his money because Hazelton, the former employee, owed several months' back bills. Harrell started out to find Hazelton, and seeing his car parked in front of Finkelstein's on O street, Harrell went in, and there had a discussion with Hazelton and Finkelstein with reference to the arrears in the light bill. Hazelton agreed that he would pay all the back bills as soon as he had money, and Harrell started to return to his place of employment at the Vine street property, taking the most direct route, and when he had gone about half a block the accident occurred, at about 1:30 p. m., near the alley on Twenty-first street. The light bill was made out in Finkelstein's name, as he owned the house. There was a line ran out in the yard and an electric light out there that Harrell said he could turn on if he went out to look for some parts at night, or if he ever heard any prowlers out there.

The question to be determined is whether the relationship of master and servant existed between Finkelstein and Harrell at the exact time of the accident; that is, was the employee acting within the scope of his employment? Was he under the direction of his employer and performing any duties for him when the accident occurred?

Mr. Finkelstein was not called as a witness by either side. From the testimony we are satisfied that Harrell started out during the noon hour to pay his own light bill and was engaged in that business on this trip, and none other. We find that Harrell was using his employer's car but was not in the service of such employer. We have held that an employer is not liable for damage resulting

from the negligence of an employee in the operation of a motor vehicle when not engaged in the performance of any duty for his employer. *Wise v. Grainger Bros. Co.*, 124 Neb. 391, 246 N. W. 733. The fact that the employer may have continued to pay his employee a few weeks' wages while he was hurt does not change the rule announced.

To hold employer liable for employee's negligent operation of automobile, it must appear that use thereof was within the scope of his employment.

In our opinion the evidence entirely supports the trial court in directing a verdict for Finkelstein. The evidence would not have supported a verdict against Finkelstein.

We have examined all the errors discussed in the briefs, and find no prejudicial error therein, and the judgment is hereby

AFFIRMED.